UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOSUE V. B.,** | Civil Action No. 20-4628 (SDW) |
| **Petitioner,** | |
| v. | **OPINION** |
| **JOHN TSOUKARIS, et al.,** | |
| **Respondents.** | |

**WIGENTON,** District Judge:

Presently before the Court is the petition for a writ of habeas corpus of Petitioner, Josue V. B., filed pursuant to 28 U.S.C. § 2241. (ECF No. 1). Also before the Court is Petitioner's motion seeking a temporary restraining order. (ECF No. 3). Following an order to answer, the Government filed a response to the petition and motion (ECF No. 7), to which Petitioner has replied. (ECF No. 10). The Government thereafter filed a sur-reply. (ECF Nos. 13-14). For the following reasons, this Court will deny the petition without prejudice and will deny the motion as moot in light of the denial of Petitioner's habeas petition.

**I. BACKGROUND**

Petitioner is a twenty-eight year old native and citizen of the Dominican Republic who was admitted to the United States as a Lawful Permanent Resident in November 2006. (Document 5 attached to ECF No. 7 at 5; ECF no. 14 at 1). During his time in this country, however, Petitioner amassed a considerable history of criminal infractions, including two separate drug convictions in New Jersey in January 2018 and August 2019. (Document 5 attached to ECF No. 7 at 5). Based on this criminal history, Petitioner was taken into immigration custody and placed in removal

proceedings in January 2020. (*Id.*). Petitioner has remained detained pursuant to the Government's mandatory detention authority under 8 U.S.C. § 1226(c), to which Petitioner is subject as a result of his criminal history. (*Id.*).

At the time of his admission, Petitioner denied any serious medical issues, but was suffering from kidney stones, for which he received testing and treatment from jail staff. (ECF No. 14 at 1-10). At the end of February and in mid-March, he also received treatment and pain medication for migraines, a problem he has had apparently since childhood. (*Id.* at 17-18). On March 23, 2020, however, Petitioner reported to the medical department with symptoms including cough, sore throat, and sneezing for which he received treatment and medication. (*Id.* at 19-21). As he developed a fever and his other symptoms continued, Petitioner was seen again the following day, at which point he was given flu tests, which were negative, and was given further examination and testing, as well as medication. (*Id.* at 25). Petitioner was thereafter given daily temperature checks and continued to receive medication. (*Id.* at 29-30). The following week, Petitioner reported issues with his ability to taste or smell, as well as nasal congestion and pain, for which he was seen, treated, and provided nasal medication. (*Id.* at 32-34). Petitioner continued to receive daily temperature checks. (*Id.* at 32-35). Petitioner thereafter had a mild allergic reaction on April 5, for which he was immediately treated. (*Id.* at 36-37). On April 8, 2020, Petitioner developed a fever, was treated, and received further medication to treat his symptoms, which apparently were the result of COVID-19 infection, and resulted in Petitioner's placement in quarantine. (*Id.* at 39-40). Medical staff continued to monitor Petitioner throughout the following week, although Petitioner did refuse treatment on April 10, 2020. (*Id.* at 41-43). Petitioner was seen again on April 14, 2020 and was once again examined and provided with medication. (*Id.* at 43). Because Petitioner was now showing additional symptoms, including diarrhea, he was provided updated

medications and encouraged to get additional rest and increase his hydration levels. (*Id.* at 44). Petitioner also had a chest X-ray taken on April 14, 2020, which showed no serious cause for concern at that time. (*Id.* at 56). Petitioner's medication and monitoring continued for the following week. (*Id.* at 44-51).

After reporting pain on his side, Petitioner was next seen by a doctor on April 19, 2020. (*Id.* at 52). Following this visit, his medication was updated, and his medical monitoring continued for several more days. (*Id.* at 52-56). On April 22, 2020, Petitioner consented to a COVID-19 test, which indicated that Petitioner had had the virus and was likely recovering and in the process of developing an immunity to the virus. (*Id.* at 57-58). The following day, he also received another chest X-ray. (*Id.*). Petitioner was also given updated medication, including Imodium for his ongoing diarrhea issues. (*Id.*). On April 28, 2020, Petitioner reported sleeping issues, continued diarrhea, and coughing blood. (*Id.* at 62). Petitioner also reported bloody stool. (*Id.* at 63). The stool issue was determined to likely be the result of hemorrhoids, and Petitioner was otherwise provided with additional medication to treat both this issue and his ongoing COVID-related symptoms. (*Id.* at 64). Petitioner continued to receive sick calls, medical evaluations, and medication through May 5, 2020. (*Id.* at 64-71). Petitioner's medical records beyond May 5 are not currently available.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 2241(c), habeas relief may be extended to a prisoner only when he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has jurisdiction over such a petition if the petitioner is "in custody"

and the custody is allegedly "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989). As Petitioner is currently detained within this Court's jurisdiction, by a custodian within the Court's jurisdiction, and asserts that his continued detention violates due process, this Court has jurisdiction over his claims. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Braden v. 30th Judicial Circuit Court*, 410 U.S. 484, 494-95, 500 (1973); *see also Zadvydas v. Davis*, 533 U.S. 678, 699 (2001).

**B. Analysis**

In his habeas petition and briefing in this matter, Petitioner argues that he should be released from immigration detention because he has been subjected to punitive conditions of confinement and has received insufficient medical care in light of his medical history, apparent COVID infection, and the general threat posed by the COVID-19 epidemic. As this Court recently explained, assuming the COVID-19 pandemic is a sufficiently severe circumstance that would warrant permitting a habeas claim based upon Petitioner's conditions of confinement, claims such as Petitioner's

> could be construed in two fashions – as a claim asserting that the jail has been deliberately indifferent to Petitioner's medical needs, or as a claim asserting that the conditions under which he is detained amount to an unconstitutional application of punishment without a supporting conviction in violation of the Due Process Clause. As there is no clear guidance from the Courts of Appeals or Supreme Court on how to adjudicate such claims in light of an ongoing pandemic, many courts have found that insufficient jail action in light of the virus can serve as a basis for release under [the circumstances], *see, e.g,*, *Rafael L.O. v. Decker*, No. 20-3481, 2020 WL 1808843 (D.N.J. Apr. 9, 2020); *Cristian A.R. v. Thomas Decker, et al.*, No. 20-3600 (D.N.J. Apr. 12, 2020); *Basank v. Decker*, No. 20-2518, 2020 WL 1481503 (S.D.N.Y. Mar. 26, 2020); *Castillo v. Barr*, No. 20-00605, 2020 WL 1502864 (C.D. Cal. Mar. 27, 2020); *Thakker v. Doll*, No. 20-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020); *Malam v. Adducci*, No. 20-10829, 2020 WL

1672662 (E.D. Mich. Apr. 5, 2020); while many others have found that, where the jail takes adequate precautions in light of a given petitioner's medical history, no such relief is warranted. *See, e.g., Dawson v. Asher*, No. 20-409, 2020 WL 1304557 (W.D. Wa. Mar. 19, 2020) (rejecting TRO request because detainees could not succeed on merits of request for relief without at least showing concrete likelihood of actual injury as opposed to mere speculation in light of the legitimate governmental interest in detaining aliens throughout removal proceedings); *Sacal-Micha v. Longoria*, No. 20-37, 2020 WL 1518861 (S.D. Tex. Mar. 27, 2020) (rejecting habeas TRO based on medical conditions of confinement claim as that claim normally must be brought under § 1983, and in any event such a claim is not likely to succeed in the absence of a showing of deliberate indifference to the detainees medical needs); *Lopez v. Lowe*, No. 20-563, 2020 WL 1689874 (M.D. Pa. Apr. 7, 2020) (denying request for TRO by habeas petitioner as he could not establish deliberate indifference to his medical needs).

Turning first to the issue of Petitioner's medical needs, for an immigration detainee to make out a claim for relief based on a jail official's insufficient treatment or deliberate indifference to his medical needs under the Due Process Clause, he must show both that he is subject to a sufficiently serious medical need, and that jail officials have been deliberately indifferent to that need. *See, e.g., Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017); *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Even assuming that [the threat of] COVID-19 in and of itself is a sufficiently serious need, or that Petitioner's [asthma] is sufficiently serious to oblige the jail to take action to alleviate the risk presented by the virus, success on such a claim would still require Petitioner to show that officials at the jail were deliberately indifferent to that need – i.e. that Respondents "kn[e]w of and disregard[ed] an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). This requires that the [respondent] was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* Where some treatment or proscriptive action designed to alleviate the medical need has been provided and the dispute is over the adequacy of the treatment or preventative steps taken, federal courts "are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.'" *Everett v. Nort*, 547 F. App'x 117, 121 (3d Cir. 2013) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n. 2 (3d Cir. 1979)). Neither a detainee's subjective dissatisfaction or

> disagreement with the professional judgment of medical staff as to how best to deal with a medical issue are normally sufficient to establish deliberate indifference. *Hairston v. Director Bureau of Prisons*, 563 F. App'x 893, 895 (3d Cir. 2014); *White v. Napolean*, 897 F.2d 103, 110 (3d Cir. 1990); *Andrews v. Camden Cnty.*, 95 F. Supp. 2d 217, 228 (D.N.J. 2000).
>
> . . . .
>
> . . . A claim challenging conditions [of confinement] under the Due Process Clause [under the theory that those conditions amount to punishment in the absence of a supporting conviction in turn] has both a subjective and objective component – the objective component requiring a showing that the deprivation involved in the conditions was sufficiently serious, and the subjective component requiring that jail officials act with a sufficiently culpable mind. [*Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (citing *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979))]. The subjective component can be established by showing an express intent to punish; or by showing that the conditions in question were arbitrary, purposeless, or excessive in relation to the ascribed governmental objective. *Id.* Conditions which are reasonably related to a legitimate government interest and which are not excessive in relationship to that interest will therefore not support a claim in the absence of a showing of an express intent to punish. *Id.* at 67-69. . . . [I]mmigration detention is clearly reasonably related to a legitimate government interest – the Government's interest in securing those subject to removal proceedings pending the conclusion of those proceedings in order to ensure they do not abscond and that they attend those proceedings while also ensuring they are not a danger to the community in the meantime. *See, Dawson*, 2020 WL 1304557 at *2; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690-91.

*Jorge V.S. v. Green*, No. 20-3675, 2020 WL 1921936, at *2-4 (D.N.J. Apr. 21, 2020).

Turning first to Petitioner's conditions of confinement, as Petitioner has not shown in any way that his jailors acted with an express intent to punish him, he can only succeed on his claim by showing that the conditions under which he is detained are either arbitrary, purposeless, or excessive in relation to their stated objective – securing immigration detainees to ensure they are neither a danger to the community nor a flight risk. The record in this matter clearly demonstrates

that the jail in which Petitioner is detained has taken numerous concrete steps to alleviate and mitigate the risk COVID-19 presents to its inmate population.  Following government recommendations and guidelines for detention facilities, the jail has increased its inventory of needed supplies, educated both inmates and staff on the virus and how it is spread, suspended or limited the entrance into the facility of non-necessary individuals including guests and volunteers, increased the frequency of the cleaning and disinfecting of the facility, provided additional soap and hand sanitizer as well as disinfectant cleansers to the detainees within the jail, instituted health screenings and monitoring for detainees and jail staff, and purchased a significant supply of masks and other protective equipment.  (Document 3 attached to ECF No. 13 at 1-12).  The jail has also put into place quarantine and cohorting protocols under which any inmate with symptoms of respiratory illness is provided a surgical mask and is monitored, those who show moderate to severe symptoms are sent to the hospital for testing and medical evaluations, while those with more mild symptoms are treated in house; those who are symptomatic are placed in quarantine and those who were exposed to symptomatic detainees but who are not symptomatic themselves are placed in a separate housing area together.  (*Id.* at 8-10).  Those in quarantine or in the separate cohorted unit remain separate from general population for at least fourteen days.  (*Id.* at 10).  Those detainees who are, per CDC guidelines, in high risk groups are housed separately from the general population.  (*Id.* at 14).  The jail has also begun to use an antibody test upon the detainee and inmate population for the purposes of housing determinations.  (Document 1 attached to ECF No. 13).  While the test alone cannot confirm COVID-19 exposure, recovery, or immunity, it does provide the jail with more information with which to determine who among the asymptomatic population should be placed in or released from quarantine.  (*Id.* at 5-6).  In light of these and the numerous other steps the jail has taken to protect inmates from the COVID-19 threat to the best of

its abilities, this Court finds that Petitioner's current conditions of confinement are rationally related to a legitimate Government purpose, are not excessive in relation to that purpose, and are neither arbitrary nor purposeless. As such, and as Petitioner has not shown any subjective intent to punish him on the part of jail staff, Petitioner's conditions of confinement claim fails to provide a basis for habeas relief.

Petitioner's deliberate indifference to medical needs claim likewise fails to state a valid basis for habeas relief. Petitioner's medical records clearly show that jail medical staff continually and daily monitored his condition throughout his apparent COVID-19 illness, provided tailored treatment and medications to him, and adjusted those medications and treatments as his symptoms changed or developed. Petitioner was also given at least two chest X-rays, neither of which indicated a need for more serious treatment, and received numerous medical visits during his ongoing illness. In combination with the concrete steps taken to alleviate the threat of the virus discussed above, Petitioner's medical records clearly show that the jail's staff were not deliberately indifferent to his needs, and instead indicate that Petitioner's claim is little more than a disagreement with the specific course of treatment he received, which is insufficient to amount to a constitutional violation. *White*, 897 F.2d at 110. Petitioner's medical claim is therefore insufficient to warrant the extreme form of relief he seeks, even assuming that his respiratory illness was in fact COVID-19 as the Due Process Clause does not require that jail staff absolutely ensure a detainee remains free from all illness, nor does it require that they ensure his perfect recovery without pain or discomfort. *V.S.*, 2020 WL 1921936 at *3; *see also Sacal-Micha;* 2020 WL 1518861 at *6. The Due Process Clause requires that jail staff not be deliberately indifferent to the medical needs of a detainee such as Petitioner, and the medical records in this case clearly indicate that they were not indifferent to Petitioner's illness. Petitioner's deliberate indifference

claim thus fails to state a valid basis for habeas relief. As this Court finds that Petitioner has neither shown that jail staff have been deliberately indifferent to his medical needs, nor that he has been subjected to unconstitutional conditions of confinement, Petitioner's habeas petition is denied, and Petitioner's motion seeking a temporary restraining order is denied as moot in light of the denial of this matter.

**III. CONCLUSION**

For the reasons expressed above, Petitioner's habeas petition (ECF No. 1) is DENIED WITHOUT PREJUDICE and his motion seeking a temporary restraining order (ECF No. 3) is DENIED as moot in light of the denial of his habeas petition. An appropriate order follows.

Dated: May 11, 2020

*s/ Susan D. Wigenton*
Hon. Susan D. Wigenton,
United States District Judge